UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
Case No.: _____

| | |
|---|---|
| HENRY DANOVICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TOBIAS & ASSOCIATES INC. d/b/a | ) |
| GetMeHealthcare, MICHAEL TOBIAS and | ) |
| SHANE BRODIL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **COMPLAINT**

Plaintiff HENRY DANOVICH ("Plaintiff"), sues the Defendants, TOBIAS & ASSOCIATES INC. d/b/a GetMeHealthcare (hereinafter referred to as "GetMeHealthcare" or "Corporate Defendant"), MICHAEL TOBIAS ("Tobias") and SHANE BRODIL ("Brodil") (collectively referred to as "Defendants") and allege the following:

## **NATURE OF ACTION**

1)  This action arises out of Danovich's employment relationship with the Corporate Defendant, including his wrongful termination in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"); Fla. Stat. §784.03 (Battery); and Florida common law.[1]

---

[1] Plaintiff will file a Charge of Discrimination and Retaliation with the EEOC. As soon as the EEOC issues its Right to Sue, Plaintiff will move to amend this Complaint to include claims of discrimination and retaliation under the ADA and FCRA.

1

## JURISDICTION AND VENUE

2)      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4), 28 U.S.C. § 1367, and 28 U.S.C. § 2617.

3)   Venue is proper under 28 U.S.C. § 1391(b) because the acts complained of by Danovich occurred within this judicial district, Plaintiff resides and resided in Palm Beach County at the time of the acts complained of, and Defendants have their principal place of business and engaged in providing insurance in Palm Beach County, Florida. Danovich's employment records are stored and were administered in Palm Beach County.

4)      Plaintiff also invokes the supplemental jurisdiction of this Court to hear and decide claims arising under the laws of the State of Florida that are so related to claims in the action within the original jurisdiction of this district Court that they form part of the same case or controversy under Article III of the United States Constitution.

## PARTIES

5)      At all times material, Plaintiff Henry Danovich is and was a resident of Broward County, Florida.

6)      Defendant Tobias & Associates Inc. d/b/a GetMeHealthcare is, and at all times mentioned was, a Florida Profit Corporation, having its main place of business in Palm Beach County, Florida.

7)      Defendant Michael Tobias is, and at all times mentioned was, a resident of and engaged in business in Palm Beach County, Florida.

8)      Defendant Shane Brodil is, and at all times mentioned was, a resident of and engaged in business in Palm Beach County, Florida.

9)      At all times material, Plaintiff was an "eligible employee" as defined by 29 U.S.C. §2611(2), and a "person" as defined by 29 U.S.C. §2611(8). Plaintiff specifically incorporates the definitions of "eligible employee" and "person."

10)     At all times material, Defendants were a "person" and an "employer" as defined by 29 U.S.C. §2611(4) and (8). Plaintiff specifically incorporates the definitions of "person" and "employer."

11)     At all times material, GetMeHealthcare was an insurance company, and employed at least fifty employees within seventy-five miles of Plaintiff's worksite.

12)     At all times material, GetMeHealthcare was and is private sector employer.

13)     GetMeHealthcare employed 50 or more employees in 20 or more workweeks in the current or preceding calendar year.

14)     Plaintiff worked for Defendants for more than 12 months and more than 1,250 hours.

15)     Plaintiff has retained the undersigned counsel in order that his rights and interests may be protected. Plaintiff has become obligated to pay the undersigned reasonable attorneys' fees.

## FACTUAL ALLEGATIONS

16)     Since year 2011 until the date of his wrongful termination, Plaintiff was employed by Defendants as an insurance agent.

17)     During all relevant times, Plaintiff was tasked with promoting GetMeHealthcare to customers who needed insurance, networking with potential customers, educating customers on different types of insurance coverages and making recommendations based on their needs.

18)     Throughout his employment, Plaintiff performed his work admirably and successfully. Often, Plaintiff was recognized as one of the top selling insurance agents.

19)     During or around September 2019, Plaintiff sought medical treatment for his severe anxiety and depression, a medical condition he was initially diagnosed with in year 2015. Plaintiff's medical provider prescribed medication to treat his severe anxiety and depression.

20)     Plaintiff immediately informed Defendants of his medical condition. Specifically, Plaintiff spoke to owner Tobias and his immediate supervisor Brodil, and informed them that he may need to take periodic leave to seek medical care and treatment, including but not limited to doctor visits and therapy sessions.

21)     Thus, at all times material, Defendants were aware of Plaintiff's severe anxiety and depression medical conditions.

22)     Although Plaintiff continued to excel in his position, after Defendants became aware of Plaintiff's disability or perceived disability, Plaintiff noticed that Tobias and Brodil began treating him different than other similarly situated employees who did not have a disability or perceived disability.

23)     Particularly, Defendants subjected Plaintiff to unwelcomed jokes and pranks, derogatory text messages and phone calls, assaults on his person and character, physical restraints, and batteries.

24)     After learning of Plaintiff's medical condition, Defendants engaged in conduct toward Plaintiff, in the workplace, which created an extreme, pervasive and severe hostile work environment. For example, and not provided as an exhaustive list, without explanation:

a)  When Plaintiff had to take leave to attend his doctor's appointments and/or therapy sessions, Tobias constantly called Plaintiff and demanded that Plaintiff immediately report to work.

b)  Plaintiff's supervisors Tobias and Brodil, and coworkers at the direction of Plaintiff's supervisors, would restrain Plaintiff and tie his feet to his work chair so that he could not leave his workstation, no matter how hard Plaintiff tried to get out of the restraints.

c)  Tobias contacted Plaintiff via phone and would refer to Plaintiff throughout the phone calls as a "Con Artist," "Piece of Shit," and "Faggot."

d)  Defendants placed embarrassing and humiliating notes with derogatory terms at Plaintiff's workstation and on Plaintiff's person, with phrases such as "I Do Drugs." Plaintiff understood the reference to drugs to relate to his use of prescribed medications for his medical conditions.

e)  Defendants violated Plaintiff's confidentiality and embarrassed and humiliated Plaintiff by telling others, such as Plaintiff's mother, that he used drugs.

f)  Defendants sent unwelcomed pornography and other content of a sexual nature to Plaintiff's work computer, such as emails depicting naked photos of men in sexual positions.

g)  Tobias often encouraged Plaintiff to kill himself, stating "You should just kill yourself. Your daughter would be better off without a loser like you in her life."

h)  Defendants also physically victimized and battered Plaintiff in the presence of other employees. On one occasion, Tobias rammed Plaintiff's head into a conference room table, causing Plaintiff physical injury and substantial bleeding, after he found

a prescription pill at Plaintiff's workstation. On another occasion, Tobias punched Plaintiff repeatedly, causing Plaintiff substantial bruising and other injuries, after becoming enraged by Plaintiff's disagreement with something Tobias stated.

25)     At all relevant times during his employment, Defendants also micromanaged Plaintiff by, among other things, surveilling Plaintiff during the workday.

26)     Defendants' conduct toward Plaintiff was unwelcomed, abusive and sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant and to create an abusive working environment.

27)     The severity and pervasiveness of Defendants' conduct toward Plaintiff substantially worsened Plaintiff's anxiety and depression.

28)     After sharing his medical condition, and throughout the remainder of his employment with Defendants, Defendants' conduct toward Plaintiff created a hostile work environment.

29)     Each time, Plaintiff complained to Defendants, asked Defendants to stop or cause the mistreatment and abuse to stop, and expressed that the mistreatment was unwelcomed. However, when Plaintiff complained to Defendants he was ignored or threatened and belittled. Rather than refraining from mistreating Plaintiff, Defendants continued in an ongoing fashion.

30)     Each day, Defendants conduct toward Plaintiff worsened. During or around October 2020, Defendants stated that because Plaintiff was "fucking" with the company's money, Defendant was going to "fuck" with Plaintiff's money. Brodil expressed that Plaintiff's breaks, which he was legally entitled to take during his workday, was Plaintiff's way of "fucking" with Corporate Defendant's money.

31)     Thereafter, Plaintiff noticed that the lead calls assigned to him drastically decreased in quantity and quality. Accordingly, Plaintiff was transferred less than 50% of the calls normally transferred to him. Additionally, the quality of calls transferred to Plaintiff decreased, and therefore rarely resulted in commissions.

32)     The decrease calls had a direct effect on Plaintiff's income, since a portion of Plaintiff's compensation was commissions earned from insurance the company was able to sell.

33)     Plaintiff understood that his decrease in compensation was Brodil's way of fulfilling his promise to negatively affect Plaintiff's money.

34)     Plaintiff complained to Defendant regarding his decrease in pay and shared his contentions that his immediate supervisor Brodil was purposely causing him to receive less calls of lesser quality.

35)     After he complained, Plaintiff began receiving more calls, similar to the number of calls received prior to Brodil's expression that he was going to "fuck" with the Plaintiff's money. The quality of calls Plaintiff received also improved. Accordingly, the sum amount of compensation Plaintiff received increased.

36)     However, as Plaintiff continued to contest the mistreatment he endured on a daily basis, and as outlined supra in paragraph 26, Plaintiff noticed that his calls once again decreased.

37)     Plaintiff again complained about the calls transferred to his workstation and contended that the decrease was at the direction of his supervisors, Tobias and Brodil. However, this time, Defendants failed to investigate or otherwise sufficiently respond to Plaintiff's complaint. Accordingly, Plaintiff's compensation, once again, substantially decreased.

38)     Defendants' continuous discriminatory, retaliatory and harassing conduct toward Plaintiff continued to negatively impact his anxiety and depression, eventually causing his mental

and emotional state to spiral out of control. Plaintiff began to feel like he was not worthy of living, and considered suicide.

39)     During or around December of 2020, Plaintiff informed Defendants that his mental condition worsened and that he was seeking medical treatment for his depression and anxiety, in the form of in-patient care. In response, Tobias and Brodil mocked Plaintiff, and removed him from the Corporate Defendant's insurance plan.

40)     The unlawful employment practices complained of herein and the actions of Defendants and Defendants' agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

41)     Defendants' management employees were aware of the mistreatment and harassment he suffered at work and Defendants failed to act or sufficiently respond to stop the harassment. Plaintiff would constantly ask his supervisors and co-workers to stop or management to cause the conduct toward him to stop, but his requests were ignored.

42)     Nevertheless, and despite the unlawful mistreatment, Plaintiff persistently excelled in his position until December 28, 2020, when Defendants wrongfully terminated Plaintiff's employment.

43)     At no moment, did Defendants notify Plaintiff of his eligibility to take FMLA leave.

### COUNT I: INTERFERENCE WITH FMLA RIGHTS - FAILURE TO PROVIDE FMLA INFORMATION

44)     Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

45)     During or around year 2012, Plaintiff became eligible for FMLA leave. Accordingly, at the time Plaintiff sought medical care and treatment for his mental condition in year 2019 and then again in year 2020, Plaintiff was employed with Defendants for more than 12

months and/or worked for Defendants more than 1,250 hours, and was therefore eligible for FMLA.

46)     In years 2019 and 2020, under the FMLA, Plaintiff was entitled to take a total of 12 workweeks of leave in a 12-month period to treat and manage his mental condition.

47)     At all times material, Plaintiff gave proper notice to Defendants by informing them of his serious mental condition, which required him to take leave to receive the proper medical care and treatment.

48)     The Corporate Defendant was a private sector employer, conducting business as an insurance company. During all relevant times, the Corporate Defendant employed 50 or more employees in 20 or more workweeks in the current or preceding calendar year.

49)     Plaintiff worked for Corporate Defendant in a location where the Corporate Defendant employed at least 50 employees within 75 miles.

50)     Eligible employees may take up to 12 workweeks of leave in a 12-month period.

51)     Despite Defendants' knowledge of Plaintiff's need to seek treatment for his serious mental condition, Defendants failed to notify Plaintiff of his eligibility status and rights under the FMLA and failed to notify Plaintiff whether his leave and/or potential leave was or could be designated as FMLA leave, Defendants interfered with Plaintiff's rights under the FMLA.

52)     As a result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants, as follows:

a.  Enter judgment in Plaintiff's favor and against Defendants for interfering with Plaintiff's rights under the FMLA;

b.  Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, and lost future earnings capacity;

    c.   Award Plaintiff liquidated damages;

    d.   Award Plaintiff prejudgment interest on his damages award;

    e.   Award Plaintiff reasonable costs and attorney's fees;

    f.   Award Plaintiff any further relief pursuant to the FMLA; and

    g.   Grant Plaintiff such other and further relief as this court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT II: INTERFERENCE WITH FMLA RIGHTS - TERMINATION

53)    Plaintiff repeats and re-alleges paragraphs 1 through 40 and 42 through 49 as if fully stated herein.

54)    In years 2019 and 2020, Plaintiff was eligible for FMLA leave.

55)    Defendant failed to afford Plaintiff the right to take FMLA leave when it constantly called Plaintiff during the times of Plaintiff's doctor's appointments and therapy sessions, and demanded that Plaintiff immediately report to work.

56)    Despite Defendants' knowledge of Plaintiff's serious mental condition, Defendants cancelled Plaintiff's health insurance and fired Plaintiff instead of affording him the opportunity to request or take FMLA leave.

57)    When Defendants impeded on Plaintiff's right to take leave, cancelled Plaintiff's health insurance and then fired Plaintiff, they interfered with Plaintiff's rights under the FMLA.

58)    As a result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants, as follows:

    a.   Enter judgment in Plaintiff's favor and against Defendants for interfering with Plaintiff's rights under the FMLA;

b.    Award Plaintiff actual damages suffered, including back pay, front pay, loss of

benefits, future pecuniary loss, and lost future earnings capacity;

c.    Award Plaintiff liquidated damages;

d.    Award Plaintiff prejudgment interest on his damages award;

e.    Award Plaintiff reasonable costs and attorney's fees;

f.    Award Plaintiff any further  relief pursuant to the FMLA; and

g.    Grant Plaintiff such other and further relief as this court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT III: VIOLATION OF THE FMLA – RETALIATION

59) Plaintiff repeats and re-alleges paragraphs 1 through 40, 42 through 49, and 52-54 as if fully stated herein.

60) Defendants terminated Plaintiff following his notification about serious medical conditions, and need for intermittent leave to attend therapy sessions, doctor appointments, and inpatient treatment. These notifications constitute a request for taking FMLA leave.

61) Defendants intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff when, after Plaintiff requested to take leave for medical reasons, Defendants harassed and battered Plaintiff as described supra at paragraph 26, removed Plaintiff from Defendants medical insurance plan and then terminated Plaintiff.

62) Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of his termination.

63) As a direct and proximate result of the intentional violations by Defendants of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a.  Enter judgment in Plaintiff's favor and against Defendants for violations of the FMLA;

b.  Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c.  Award Plaintiff compensatory damages under the FMLA for embarrassment, anxiety, humiliation and emotional distress Danovich has and continues to suffer;

d.  Award Plaintiff liquidated damages;

e.  Award Plaintiff prejudgment interest on his damages award;

f.  Award Plaintiff reasonable costs and attorney's fees; and

g.  Grant Plaintiff such other and further relief as this court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT IV: BATTERY AGAINST TOBIAS

64) Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

65) When Tobias rammed Plaintiff's head into a conference room table, and repeatedly punched Plaintiff, as described in paragraph 25(f), he acted intending to cause harmful or offensive contact with Plaintiff, or an imminent apprehension of such contact.

66) Plaintiff did not welcome Tobais pounding his face into the conference room table or punching him repeatedly, and therefore Tobias engaged in unwelcomed and actual offensive contact with Plaintiff.

67) Plaintiff has been damaged as a result of the intentional and offensive contact perpetrated by Tobias.

68) Tobias' acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

    a.  Award Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

    b.  Award a monetary judgment representing prejudgment interest;

    c.  Award Plaintiff punitive damages;

    d.  Award any other compensation allowed by law; and

    e.  Grant Danovich such other and further relief as this court deems equitable and just.

### COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST INDIVIDUAL DEFENDANTS, TOBIAS AND BRODIL

69) Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

70) Tobias and Brodil's conduct was intentional or reckless, that is, they intended their behavior when they knew or should have known that emotional distress would likely result.

71) Tobias and Brodil's conduct was unwelcomed, invasive, persistent and so outrageous, that their conduct toward Plaintiff surpassed all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community.

72) Tobias and Brodil's conduct toward Plaintiff caused Plaintiff to suffer severe emotional distress.

73) The outrageous conduct portrayed by Tobias and Brodil, was directed at Plaintiff, in the course and scope of employment.

74) As a direct and proximate result of the outrageous acts described herein, Plaintiff sustained mental pain and suffering, emotional distress, mental anguish, inconvenience and loss of capacity for the enjoyment of life.

75) Tobias and Brodil's acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a)  Award Plaintiff compensatory damages for embarrassment, anxiety, humiliation and emotional distress Plaintiff has and continues to suffer;

b)  Award Plaintiff monetary judgment representing prejudgment interest;

c)  Award Plaintiff punitive damages;

d)  Award any other compensation allowed by law; and

e)  Grant Plaintiff such other and further relief as this court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT VI: FALSE IMPRISONMENT AGAINST
## INDIVIDUAL DEFENDNATS TOBIAS AND BRODIL

76) Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

77) During the course of Plaintiff's employment, Tobias and Brodil would tie and restrain or cause others to tie and restrain Plaintiff to his desk against his will.

78) Tobias and Brodil, acted without Plaintiff's consent and lawful authority to restrain Plaintiff to his desk while at work.

79) When Tobias and Brodil tied and restrained or caused others to tie and restrain Plaintiff to his desk, these Defendants unlawfully restricted Plaintiff's freedom of movement in that they prevented Plaintiff from leaving his workstation / area and freely getting up from his desk.

80) While restrained at work, Plaintiff would repeatedly try to get out of the restraints

but was not able to do so. When Plaintiff repeatedly asked to be released, Defendants would tell

him no because he was "getting up to use the bathroom too much".

81) While restrained at work, Plaintiff had no reasonable means to leave his desk.

82) As a direct and proximate result of the unlawful detention, Plaintiff suffered severe

emotional distress.

83) Due to the nature of the unlawful imprisonment and the wanton and outrageous

disregard for Plaintiff's rights exhibited by Defendants, Plaintiff specifically requests that the

Court award punitive damages against Defendants.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Award Plaintiff compensatory damages for false imprisonment and deprivation of

personal liberty;

b.   Award a monetary judgment representing prejudgment interest on his damages

award;

c.   Award Plaintiff punitive damages;

d.   Award any other compensation allowed by law;

e.   Grant Danovich such other and further relief as this court deems equitable and

just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT VII: DEFEMATION OF CHARACTER AGAINST TOBIAS

84) Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

85) Tobias notified Plaintiff that he communicated to Plaintiff's mother that Plaintiff was

using illegal drugs.

86) Plaintiff was in fact not using illegal drugs, making Tobias statements against Plaintiff to be false.

87) Tobias statements were defamatory against Plaintiff's character, as such a statement is damaging to his character and reputation towards his family.

88) Tobias' statements to Plaintiff's mother were made negligently as he knew or should have known that the Plaintiff was not using illegal drugs.

89) As a result of these statements, Plaintiff was harmed emotionally and socially towards his immediate family as Tobias slanderous statements caused Plaintiff's reputation to be tarnished.

90) Tobias acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Award Plaintiff compensatory damages for defamation of character and reputation;

b.  Award a monetary judgment representing prejudgment interest on his damages award;

c.  Award Plaintiff punitive damages;

c.  Award any other compensation allowed by law;

d.  Grant Danovich such other and further relief as this court deems equitable and just.

<div align="center">

**<u>JURY TRIAL DEMAND</u>**

</div>

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

<div align="center">

**COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS <u>AGAINST THE CORPORATE DEFENDANT</u>**

</div>

91) Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

92) Corporate Defendant owed Plaintiff a ministerial, operational, and non-discretionary duty to take reasonable precautions to protect Plaintiff, and other employees similarly situated to Plaintiff, from harassment, abuse, and discrimination that can be reasonably anticipated.

93) Corporate Defendant negligently failed to protect Plaintiff from harassment, abuse, and discrimination as more fully described above, in paragraphs 13 through 22 and 26 through 40, that could have been reasonably anticipated.

94) Throughout Plaintiff's employment with Corporate Defendant, Tobias, Brodil and Corporate Defendant's other employees inflicted discrimination, harassment, restraint, abuse, severe emotional distress and battery upon Plaintiff, and subjected Plaintiff to an abusive and hostile work environment.

95) During the course of the employment of Tobias, Brodil and other employees of the Corporate Defendant, the Corporate Defendant became aware or should have become aware of its employees' unlawful behavior toward Plaintiff.

96) Specifically, Plaintiff complained multiple times, in detail to managers and to Human Resources, who are agents of the Corporate Defendant.

97) In addition, the Corporate Defendant should have seen the recordings of Tobias and Brodil's offensive and abusive behavior toward Plaintiff.

98) Corporate Defendant's negligent failure to protect Plaintiff from harassment, abuse, and discrimination was done in bad faith.

99) As a result of Corporate Defendant's negligence, Plaintiff has experienced severe and extreme emotional distress that has had a physical impact upon Plaintiff.

100)    Plaintiff request that the Court award compensatory damages in an amount to be

determined according to proof by Plaintiff against all Defendants in their individual capacities.

101) Corporate Defendant's acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a) Award Plaintiff compensatory damages for embarrassment, anxiety, humiliation and emotional distress Plaintiff has and continues to suffer;

b) Award Plaintiff monetary judgment representing prejudgment interest;

c) Award Plaintiff punitive damages;

d) Award Plaintiff costs, expenses, reasonable attorneys' fees and any other compensation allowed by law; and

e) Grant Plaintiff such other and further relief as this court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT IX: NEGLIGENT TRAINING AND SUPERVISION AGAINST THE CORPORATE DEFENDANT

102) Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

103) Corporate Defendant, during the times mentioned was, and now is, engaged in the restaurant business.

104) At all times relevant herein, Tobias and Brodil, were employees, agents, and / or representatives of Corporate Defendant and was charged by Corporate Defendant with supervising Plaintiff.

105) Throughout Plaintiff's employment with Corporate Defendant, Tobias inflicted

mental pain and suffering, emotional distress, mental anguish, inconvenience, loss of capacity for the enjoyment of life, harassment, battery, discrimination, and abuse, upon Plaintiff. Brodil inflicted mental pain and suffering, emotional distress, mental anguish, inconvenience, loss of capacity for the enjoyment of life, harassment, discrimination, and abuse, upon Plaintiff, as more fully explained more specifically in paragraphs 13 through 22 and 26 through 40.

106) Corporate Defendant was negligent in failing to adequately train and supervise their employees, including Tobias and Brodil. Corporate Defendant's negligent failure to train and supervise was done in bad faith.

107) As a result of Corporate Defendant's negligence, Plaintiff was deprived of the benefits

of other employees of Corporate Defendant, and suffered physical and emotional injuries.

108) Despite knowing about Tobias and Brodil's unlawful actions, Corporate Defendant failed to take action. It did not admonish Tobias and Brodil, nor did the Corporate Defendant, train, fire, suspend, reprimand, or investigate this employee. Instead, Corporate Defendant fired Plaintiff

109) As a result of Corporate Defendant's actions, Plaintiff has been damaged. Plaintiff request that the Court award compensatory damages in an amount to be determined according to proof by Plaintiff against Corporate Defendant.

110) Corporate Defendant's acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

    a. Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

    b.   Award a monetary judgment representing prejudgment interest on his damages award;

    c.   Award Plaintiff punitive damages;

    d.   Award any other compensation allowed by law;

    e.   Grant Plaintiff such other and further relief as this court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

## COUNT X: NEGLIGENT RETENTION AGAINST THE CORPORATE DEFENDANT

111)    Plaintiff repeats and re-alleges paragraphs 1 through 40 as if fully stated herein.

112)    During the course of the employment of Tobias, Brodil, and other employees referenced herein as John Doe 1 - 10, Corporate Defendant became aware or should have become aware of these employees' unlawful behavior toward Plaintiff.

113)    Plaintiff complained in detail to Defendants about the actions more fully described in paragraphs 13 through 22 and 26 through 40.

114)    Furthermore, Corporate Defendant must have seen recordings of its surveillance cameras and viewed how, among other things:

    a)   Tobias unlawfully touched Plaintiff, by pounding Plaintiff's head into a conference room table;

    b)   Tobias repeatedly punched Plaintiff;

    c)   Tobias, Brodil and other employees tied or caused Plaintiff to be tied and restrained to his desk;

    d)   Tobias, Brodil and other employees wrote offensive, embarrassing and humiliating statements on Plaintiff's person; and

    e)   Tobias and Brodil mocked Plaintiff regarding his severe medical condition; etc.

115)    Despite knowing about Tobias, Brodil and employees John Doe 1 – 10 unlawful actions, Corporate Defendant failed to take action. It did not admonish Tobias, Brodil or it's other employees John Doe 1 – 10, nor did the Corporate Defendant, fire, suspend, reprimand or investigate these employees. Instead, Corporate Defendant fired or constructively discharged Plaintiff.

116)    As a result of Corporate Defendant's actions, Plaintiff has been damaged.

117)    Corporate Defendant's acts were done knowingly, willfully, and with malicious intent, and Plaintiff is therefore entitled to punitive damages in an amount to be determined by proof at trial.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

    f.   Award Plaintiff compensatory damages for emotional distress, embarrassment, and humiliation;

    g.   Award a monetary judgment representing prejudgment interest on his damages award;

    h.   Award Plaintiff punitive damages;

    i.   Award any other compensation allowed by law;

    j.   Grant Danovich such other and further relief as this court deems equitable and just.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

Dated: April 12, 2021.

<div style="margin-left:50%">

By: /s/ **Tanesha W. Blye**
By: Tanesha W. Blye, Esquire
Fla. Bar No.: 0738158
Email: tblye@saenzanderson.com
Yadhira Ramirez-Toro, Esquire
Fla. Bar No.: 120506
Email: yramirez@saenzanderson.com
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549

</div>